By the Court. Slosson, J.
On the 28th day of August, 1853, at about 8 o’clock in the evening, the deceased, (Peter A. Johnson,) was run over by a freight car of the defendants’, in West street, at its intersection with Gansevoort street, and killed.
The day had been rainy, and the evening was very dark. The verdict of the jury determines that there were no bells on the horses nor lights on the car.
The deceased was a cartman, and was on his return home in the evening, driving up on the east side of the track; a sewer was in the process of construction through Gansevoort street, it had extended across the track in West street; but at the time of the accident, it had been so far completed, as that it had been arched over on the west side to about the middle of the track, while on the east side it was open, so that no vehicle going north could pass on that side beyond the south line of Gansevoort street, at which point there was a mound of earth and some barrels which had been placed there to prevent any attempt at a passage. *640 A temporary bridge bad been thrown across the sewer, where the rails crossed it, to enable the horses attached to the cars to pass over. During the day a pole was placed across the track to prevent carts passing over the bridge, which was taken down when the cars were to pass, and appears to have been removed altogether at night. On the west side of the track carts could pass, according to some of the witnesses, to some little distance north of the sewer, when the projection of a pile of lumber narrowed the passage to nine or ten feet, and just beyond this, a building used as a corporation office, formed another projection, so as to leave between it and the track only four feet four inches. It was shown that ordinary carts are seven and'a half feet wide, while dirt carts are two feet narrower, so that neither description of cart could pass at this point except by running in part on the track itself. This corporation office was nearly opposite the north sidewalk of Gansevoort street, and at the same point there was a pile of stones and dirt from a foot to a foot and a-half in height. One witness says, that the west side of the track, by which I understand him to mean the side west of the track, “ was impassable on account of the excavation, the dirt, the paving stones, and the corporation office.”
As has been stated, the night was very dark; the sound of the rolling of the car was obstructed by the water on the rails, though the clattering of the horses’ feet was heard half a block off, and might have been heard farther, as one witness states, by one in the street.
The deceased appears to have stopped and tied his horse near the embankment, on the east side of West street, at about twenty feet below the south line of Gansevoort street, and to have dismounted and gone on to the track, for when the cars had passed, he was found lying across it, about six feet south of the embankment.
It is reasonable to conjecture that his object in going upon the track, was to make a personal examination of the bridge over the causeway, with. a view of ascertaining whether he could safely pass over it, with his cart. The car had crushed one of his legs. He was removed to the hospital, and died soon afterwards. He was between thirty and forty years of age, of good habits, and making from $25 to $30 a week by his business. He left a widow, *641 (the plaintiff,) and three infant children, the youngest but three months old.
On the trial, a motion was made for a non-suit on the ground, among others, that the plaintiff had offered no pooof showing affirmatively that the deceased was not guilty of negligence which contributed to the accident, which motion was overruled, and the defendants excepted.
This court has never recognized the rule which seems to be laid down by the Supreme Court in Spencer v. The Utica and Schenectady Railroad Co., (5 Barb. Rep. 337,) to wit: That absence of negligence on the part of the plaintiff is to be shown by him affirmatively, but have held directly otherwise. The case of Britton, admx. v. The Hudson River Railroad Co., recently decided by the General Term of this court, is directly in point. It had been previously so decided in this very case. (5 Duer, 21.)
The Judge, in charging the jury, told them, “that considering the nature of the business in which the defendants were engaged, and the hazards attending the running of cars in the streets of the city, and particularly on a dark night, the defendants were bound to exercise the utmost care and diligence, and for the purpose of avoiding accidents, endangering property and life, were bound to use all the means and measures of precaution that the highest prudence would suggest, and which it was in their power to employ. Hence,” he added, “ if the use of bells and of lights was a measure that the prudence and foresight the defendants were bound to exercise ought to have suggested, and if by such use disastrous accidents would probably be avoided, the omission to use them, if proved to the satisfaction of the jury, was culpable negligence, and that it was for the jury to say, whether to this culpable negligence the fatal accident that had given rise to the action might not justly be imputed.”
To both the general proposition itself, and the application of it by the Judge, the defendants excepted.
The Supreme Court in Brand v. The Schenectady and Troy Railroad Co., (8 Barb. R. 368,) held, “ that ordinary prudence was all that could be exacted from a railroad company, as between it and a foot passenger in the street, being the same rule or degree of care which is exacted, as between each other, in the case of two carriages using a comm on highway to which each has an equal right.”
*642 "With the highest respect for the learning and ability of the eminent Judge who pronounced the decision in that case, I cannot but think that this proposition is open to serious criticism. It seems to me that the only safe rule in such a case, is this, to wit: That the company is bound to use a degree of care and vigilance in respect to the use of the means whereby accidents or injury to those using the same thoroughfare in common with themselves, may be avoided, which is proportioned to the dangerous character of its business, or of the mode and means of conducting the same, while the foot passenger is bound to that degree of caution which persons thus exposed on a public thoroughfare ought in common prudence to exercise. This prudence may in both be called ordinary, yet the degree of diligence and precaution which it exacts of each is as widely different, as is the risk to which each exposes others from the want or absence of it.
In the case of Kelsey v. Barney and others, (2 Kern. R. 425,) which was a case of collision between two vessels, Johnson, Justice, in defining ordinary care, uses this language: “ The degree of vigilance which the law will exact, as implied by the requirement of ordinary care, must vary with the probable consequences of negligence, and also with the command of means to avoid injuring others, possessed by the person on whom the obligation is imposed. Under some circumstances a very high degree of vigilance is demanded by the requirement of ordinary care; where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party’s power, ordinary care requires almost the utmost degree of human vigilance and foresight.”
The learned Justice refers in his opinion to the case of the Scioto, in which Judge Ware uses the expression that “a vessel entering a harbor in the night time, is put on her utmost vigilance.” Hot that the vessel so entering the harbor would be responsible, if by any possible means the danger of a collision might have been avoided, but that from the increased hazard arising from the circumstance of entering the harbor in the night time, an increased vigilance and watchfulness would be required, which Judge Ware exemplifies by saying, that under such circumstances the master and crew ought to be on deck, and in such *643 parts of the vessel as to be able to control her motions, and see any vessel which lies in her track. It certainly would not be contended that it would be necessary that both the master and the crew should all be on the look-out and on deck if the vessel were entering the port in broad day-light. The principle asserted is, that the vigilance and care are to be proportioned to the risk and danger to be avoided.
The good sense and soundness of this view of the question cannot, I think, be doubted. • If the vigilance and care are to be proportioned to the danger to be avoided, it becomes immaterial by what name the obligation is designated or defined. If the Judge in the case at bar had instructed the jury, that in the exercise of ordinary care, the defendants were bound to the exact degree of vigilance which he stated as the measure of their actual obligation, I do not see how the charge could have been complained of; and certainly if the standard of care which he laid down was correct, the question—whether a proper definition was given to it or not ?—is wholly immaterial.
The Judge, in applying the rule to the case in hand, defines his meaning so clearly, that it cannot, I think, be misapprehended.
He told the jury that, if the use of bells and lights would probably prevent the occurrence of such disasters, and if their use was a measure that the prudence and foresight the defendants were bound to exercise ought to have suggested, it was culpable negligence in them not to have used them. Now I think it must occur to the commonest apprehension, that the very least or lowest degree of vigilance which could be required at the hands of the defendants in running loaded cars at night, with four horses, through the streets of a crowded city, would be the use of bells and lights, or some similar precaution, to give warning of their approach. In submitting to the jury, therefore, the question of their use as a measure called for by the prudence which the law exacted from the defendants, the Judge left them clearly within the range of the rule of .ordinary care, as commonly understood, if he did not, indeed, limit them to it altogether. Nor was this left to them as a question to be arbitrarily determined; its propriety was to be tried by this criterion, to wit: Whether the use of bells and lights would probably prevent the occurrence of disasters of this nature? Of this the jury were exclusively the *644 judges, and if, in their opinion, such would be the beneficial result of the use of bells and lights, then, as upon any rule of prudence, the defendants were bound to guard against the danger of such accidents, their use was a measure called for by the degree of care which the law imposed upon the defendants.
Nor do I think that in judging of the propriety of the use of bells and lights, the jury were led by any thing in the charge to adopt a standard of obligation on the part of the defendants, which was not the true one, or that the result would have been at all different had the Judge prefaced his definition of the prudence to which the defendants were bound, by calling it “ordinary care.” Nor do I think that in any definition of ordinary care, as applied to these defendants under the circumstances detailed in this case, he could have required a less degree of vigilance and prudence than that which he laid down as the measure of their actual obligation.
- The good sense of the charge SQems to me to be plainly this : The defendants, considering the great hazard to which their business exposes the lives and safety of the passers by and travellers in the street, are bound to use that diligence and care, if practicable, by which the danger of casualty may be diminished. They cannot run their cars without any precautions whatever, and no precautions will suffice, save such as tend to secure against the occurrence of the disasters to which the exercise of their business peculiarly exposes others; and if, in the judgment of the jury, the use of bells and lights would have this tendency, then the use of that expedient was one which the prudence, exacted of them by the law, required at their hands. The test of the obligation to use them, as the case was thus put to the jury, was not the formal definition of the rule of diligence, but the tendency of the expedient to diminish the danger of those disasters, which the defendants were bound, upon the commonest principles of humanity, and under the lowest obligations of a reasonable diligence, to guard against.
• The defendants’ counsel denies altogether that the use of bells or lights is called for by the rule of ordinary care; on the contrary, he says, the degree of care which should be exercised in any given case, is a matter of law to be determined by the court; and that in leaving to the jury to determine whether the defendants should have carried lights or bells, the court shifted from *645 itself to the jury the duty of determining whether the defendants ought not to have exercised more than ordinary care.
We think there is a fallacy in this proposition. The Judge did not leave to the jury to say, whether the defendants were bound to carry bells and lights, but whether the use of them was called for by that prudence which they were bound to exercise. In other words, whether, in view of the peculiarly hazardous character of their business, and under all the circumstances of the case, it would have been a prudent measure on the part of the defendants, rendering danger of accident less liable; and if so, then, as a matter of law, he instructed them the defendants were bound to have used them; and not to have done so, was negligence.
He therefore did determine the question of law, to wit: That the prudence exacted of the defendants was that which, in view of the hazardous character of their business, would tend to diminish the danger of accident, leaving to the jury only this question—whether the use of bells and lights was a measure of that character? which was a question purely of fact.
I think the rule laid down by the Judge at the trial is the true one, to wit: A degree of care proportioned to the danger to others—whether this be called “ ordinary” care, or “the utmost,” or “highest” care, or “diligence,” is immaterial, a mere question of words; so long as the standard is right, its name is "a matter of no consequence. A great principle may easily be lost sight of in this adherence to definitions. It seems to me that no other rule can be safely adopted. It is one which is not dependent on contract or the consideration of a compensation for service, but is founded on the general principle of humanity towards others, and the obligation so to use one’s own property and exercise one’s own rights as not to injure others.
The Judge also charged, that as respects the deceased, he was bound to exercise only ordinary care; and to this there was an exception. This is certainly not a proposition that the defendants should quarrel with, as it is the one they contend should be applied to themselves.
The difficulty of applying the rule of diligence to either party in cases of this kind, arises from the very terms in which the law has, from custom, clothed the definition of it. “ Ordinary ” care, in its common acceptation, means the same thing, to whomsoever applied, and under whatever circumstances. The only solution *646 to the difficulty, is, in measuring the requirements of “ordinary care” by the circumstances of the party; and to use the language of the learned Judge, in Kelsey v. Barney, already cited: “ By the probable consequences of negligence, and by the command of means to avoid injuring others, possessed by the person on whom the obligation is imposed.” As respects these defendants, the probable consequences of their negligence would be death, or maiming to the party injured; and as to the command of means to avoid such a disaster, if the use of bells or lights would tend to such a result, it is for them to show that it is not in their power to adopt such an expedient, or they should be estopped from denying that the obligation of prudence exacts it at their hands.
When, however, we speak of ordinary prudence, as applied to a passenger in the street, we mean something widely different. His being on the track, may, under certain circumstances, be negligence, which would relieve the company from liability for the consequences of an injury to him, but it is not a negligence which exposes them to hazard; the prudence which he is to exert is one which is necessary for his own protection, and must be of precisely that degree which is commensurate with the danger to which he is exposed. To attempt to pass in front bf a carriage driven slowly, at a moderate distance, might not violate any rule of prudence, while to make the same attempt in front of a car, approaching at the same speed, and at the same distance, might be extremely hazardous. There is no applying “ ordinary care ” by a fixed measure, to all possible cases. It must vary in the degrees of its requirement according to circumstances. “ Reasonable care” would have been a much happier and more intelligible expression. We think the Judge sufficiently and promptly defined it when he said that it was “that care and foresight which men of ordinary prudence are accustomed to employ, and which, placed in like circumstances with the deceased, they probably would have employed.”
The defendants also contend that it was error in the Judge to have charged that the negligence of the plaintiff, which would excuse the defendants, must have contributed directly to the accident.
This ruling is in exact accordance with the language of the court, in Caldwell v. Murphy, (1 Duer R., 233,) and with the decision in Carroll v. N. Y. and N. H. Railroad Co., (1 Duer, 571.)
*647 The Judge further told the jury, that it was probable that from the want of lights the driver of the car could not see in front of his horses, or if there was sufficient light, that his attention was directed another way; and that upon either supposition, there was negligence to which the accident might reasonably be imputed, and to this part of the charge also the defendants excepted.
As the Judge had already left it to the jury to say whether the use of lights in the cars was a measure that the prudence and foresight which the defendants were bound to exercise ought to have suggested, this part of the charge must be read in that connection; and thus read, the meaning of it is, that if the jury should find the question thus submitted to them in the affirmative, then the absence of lights, enabling the driver to see in advance of his horses, was negligence; or if in fact there were lights, but his attention was not given to his horses, but diverted elsewhere, that would be negligence. It was reiterating in another form the proposition already advanced by him.
We think the Judge properly refused to charge that the manner in which the deceased was found on the track, without any explanation as to how he got there, was prima fade evidence of negligence on his part.
He was not discovered until after the car had passed over him, and to hold that, because he was then found lying athwart the track, his position was presumptive evidence of negligence on his part, which, unexplained, would excuse the negligence of the defendants, would be giving the latter the benefit of their own wrong, and would forever preclude the possibility of a recovery in this action.
The Judge further told the jury, in this connection, that the deceased “certainly had not seen or heard the approach of the ear in time to make his escape, and if the /act of his being found on the track was alone sufficient tó bar a recovery, no action like the present, however gross and culpable the negligence of a railroad company, could ever be maintained.”
The defendants contend that it was error in the Judge to tell the jury that the deceased “ certainly had not seen or heard the approach of the car in time to make his escape.”
As it was not pretended that the deceased was a voluntary victim, it seems to follow that he could not have seen or heard the approach of the cars. Was it negligence in him not to have done *648 so ? The defendants contend that it was. That question was not withdrawn from the jury, for they were told that if they believed from the evidence that he was guilty of any negligence directly contributing to the disaster, the plaintiff could not recover. The effect of the language in question is this: The deceased was, certainly, not on the road for the purpose of self-destruction; no presumption of this kind can be entertained, and if so, then the mere fact that he was found dead on the track does not, of itself, raise a presumption of negligence on his part which will bar a recovery.
The Judge also charged, that the omission of the defendants to call either the conductor, driver, or brakeman, as witnesses on their behalf, unexplained, raised a reasonable presumption, that if called, they would not have contradicted materially the witnesses of the plaintiff, and to this there was an exception.
This is in clear accordance with an elementary rule, that a party who has the power to produce the best evidence on the subject, and omits to do it without excusing the omission, justifies by such omission the presumption that the evidence, if adduced, would operate to his prejudice, or, at least, would not help his case. (1 Starkie’s Ev. 34; C. & H.’s Notes, n. 298.)
On the question of damages, the Judge, among other things, said to the jury, that the “ deceased was a young man in good health, and the probable continuance of his life was at least twenty years.” The defendants contend that it was error thus to have instructed the jury in respect to the probable continuance of the life of the deceased. The evidence was, that he was over thirty years old—how much does not appear; but the reasonable inference from the expression, “ over thirty years of age,” is that he was under forty.
I have been referred to certain tables prepared from the combined experience of seventeen life insurance offices, from which it appears that the expectation of human life at thirty years of age is 34-43 years, and at forty years is 27-28 years, so that the Judge was within limits when he said that it was at least twenty years. This is a matter of experience, about which it was not error in the Judge to instruct the jury.
On the whole case,, the judgment should be affirmed, with costs.
Justice Woodruff dissented from the foregoing opinion and its conclusions.