No. 2198.—A. G. KNIGHT, Administrator, etc., v. PONTCHARTRAIN RAILROAD COMPANY.

Persons who, while attempting to get on the cars at the depot station after they have been put in motion, were thrown off and severely injured, can not recover the damages there-for from the railroad company, because their own negligence and indiscretion contributed directly to the disaster. In such a case, when it is shown that the cause of the injury is attributable in the first instance directly to the imprudence or fault of the person who has received the injury, damages can not be recovered from the company, even though it be shown that they were in fault.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley*, J. *W. B. Kountz & Elliott* and *Cotton & Levy*, for plaintiff and appellee. *Bradford, Lea & Finney*, for defendant and appellant.

This case was tried by a jury in the court below.

HOWE, J. The plaintiff, as administrator and tutor, brought suit, claiming damages alleged to be due in consequence of the carelessness of the defendant's agents in causing the death of George F. Knight and his wife Euphemia, father and mother of the minors.

The answer was a general denial.

The cause was tried before a jury, who rendered a verdict in favor of plaintiff for $12,000, and from the judgment entered thereon the defendant has appealed.

It appears from the plaintiff's own testimony that on the day the accident occurred, Mr. and Mrs. Knight, with their four children and two servants, started for an excursion to the lake. They were late in arriving at the station, which extends between Girod and Lafayette streets. As they entered the building from up town, at or near the Girod street entrance, the train had already started moving down town, and they hastened to overtake it, Mr. Knight being considerably in advance, and Mrs. Knight following, somewhat out of breath, and

in what one of the witnesses calls "a slow trot." One servant, with the babe, was assisted on to the rear platform of the last passenger car but one, and some if not all of the other children were also helped on. Mr. Knight then sprung on the same platform, and holding out his hand beckoned to his wife. A police officer who was on duty near the Lafayette street end of the station, ran towards the party shouting, "For God's sake, don't you dare to encourage that lady on the cars!" Another police officer ran forward at the same time with the same intent. The warning was either not heard or not heeded. Mrs. Knight, holding her husband's hand, caught her foot probably in her own clothing, and, falling, was swung between the moving car and the stationary platform, and ground to death as the car rolled on. It might have been better for both if the husband had let go his wife's hand as she tripped; but naturally, perhaps, he held on, and was himself thrown down and one of his legs injured at and below the knee. A shout was raised as soon as Mrs. Knight fell, and the train was stopped before it had moved far, probably within forty feet. The train had moved about two hundred feet when Mr. Knight first sprung on the platform of the car, and from forty to sixty feet further when Mrs. Knight attempted to get on. How rapidly the train was moving is not certain, but it is fair to say from four to five miles an hour at least; faster than an ordinary walk. Mr. Knight died a few days after of tetanus, excited by the injury he had sustained.

The stationary platform was on a level with the platform of the car. The distance between the platform and the edge of the car was about eight inches. The distance to the upper step of the car about twenty-two inches.

It may be conjectured from the argument that there were two theories in the minds of the jury which led them to render a verdict for plaintiff:

*First*—That the police officers were in some way the agents of defendant, and either assisted and encouraged Mrs. Knight to make the rash attempt which resulted so disastrously, or neglected to prevent her; and,

*Second*—That the stationary platform was, by the neglect of the defendant, constructed in an improper and dangerous manner.

I. The policemen were not employes or agents of the company, and it was in no wise responsible for their acts or omissions. In justice to these officers, we may add that they did not encourage the attempt of the unfortunate lady to get on the car. One of them shouted the words of warning above quoted, and both tried to prevent the accident.

II. The record shows (and indeed it is difficult for any one who has traveled to ignore the fact) that platforms like the one in question are

to be found in all parts of the country, sometimes used for freight alone, sometimes for passengers alone, and sometimes for both. The plaintiff's witnesses do not agree in condemning it as an improper one. It is certain that it was perfectly safe for any one who used it to get on the cars when they were at rest, and it is equally certain that all platforms are unsafe for such use when the cars are in motion. But granting that there was an element of neglect in the use of such a platform, there is a rule of law, too well settled to be disturbed, that is invoked by defendant—the rule *volenti non fit injuria.*

The extent and application of this rule have been discussed at length in this controversy, and it seems that the numerous decisions cited may be distributed into three classes·

*First*—Where the conduct of plaintiff has as matter of fact contributed to the accident, but such conduct has not been in a legal sense imprudent or negligent. In such case the plaintiff may recover from a defendant in fault. Such was considered the state of facts in Choppin *v.* The Carrollton Railroad, 17 An. 19, as appears from the record, though not from the published report.

*Second*—Where the conduct of the plaintiff has been imprudent or negligent, but such imprudence or negligence has not contributed to the accident. In such case the plaintiff may recover from a defendant in fault.

*Third*—Where the conduct of plaintiff has been negligent and has contributed to the disaster. In such case the plaintiff can not recover, even though the defendant be in fault. Such was either the state of facts or the doctrine announced in the following cases: Fleytas *v.* Pontchartrain Railroad, 18 L. 339; Hubgh *v.* Carrollton Railroad, 6 An. 496; Damont *v.* The Same, 9 A. 441; Hill *v.* Opelousas Railroad, 11 An. 292; Myers *v.* Percy, 1 An. 374; Carlisle *v.* Holton, 3 An. 48; Murphy *v.* Deamond, 3 An. 441.

The case at bar is clearly within the last class. Much as we may regret the calamity, and deeply as we may sympathize with the bereaved, we can not shut our eyes to the fact that the conduct of both deceased was exceedingly negligent and directly contributed to the sad result.

This conclusion makes it unnecessary to pass on the other points which have been discussed.

It is therefore ordered that the judgment appealed from be reversed and the verdict set aside. It is further ordered that there be judgment in favor of defendant with costs.

Rehearing refused.