## LANG v. THE HOLIDAY CREEK R. CO.

1. **Negligence:** WHEN CONTRIBUTORY: RAILROADS. Facts considered which were held sufficient to establish contributory negligence in an action against a railroad company, for causing the death of plaintiff's decedent, and defeat recovery therefor. Following *Carlin v. The C., R. I. & P. R. Co.*, 37 Iowa, 316.

*Appeal from Webster District Court.*

WEDNESDAY, APRIL 5.

ACTION to recover damages for the alleged killing of William Lang, by reason of the negligence of the employes of defendant in running a train of cars over the said Lang, and thereby causing his death. Jury trial, verdict and judgment for plaintiff, and defendant appeals.

*Galusha Parsons* and *A. J. Reilly*, for appellee.

Plaintiff must allege in his petition and prove care on the part of her decedent, as well as negligence on the part of defendant, to entitle her to recover. (*Carlin v. C., R. I. & P. R. Co.*, 37 Iowa, 316; Shearm. & Redf. on Neg., § 30; *McAunich v. M. & M. R. Co.*, 20 Iowa, 345; *Haley v. C. & N. W. R. Co.*, 21 Id., 15; *Greenleaf v. I. C. R. Co.*, 29 Id., 14; *Muldowney v. I. C. R. Co.*, 32 Id., 176; *Wilcox v. R. W. & O. R. Co.*, 39 N. Y., 358; *Alleyna v. A. & B. R. Co.*, 105 Mass., 78; *Baxter v. Troy & Barton R. Co.*, 41 N. Y., 298.) Deceased had no legal right upon the track except when it crossed a public highway, and the burden is upon plaintiff to show that deceased used every precaution in his power to prevent the accident. (*Finlayson v. C., B. & Q. R. Co.*, 1 Dillon C. C., 579.)

*Duncombe, O'Connell & Springer*, for appellant.

That the plaintiff did not contribute to the injury is included in the idea that the injury was caused by defendant's negligence, and it is not necessary to allege plaintiff's

care in the petition. ( *Whittlesey v. H., P. & F. R. Co.*, 23 Conn., 425; *Smith v. Eastern R. Co.*, 35 N. H., 336; *May v. Princeton,* 11 Met., 442.) Ordinary diligence has no fixed and unalterable standard, but must be determined by the circumstances of each particular case. (*Murphy v. C., R. I. & P. R. Co.*, 38 Iowa, 539; *Gaynor v. O. C. R. Co.*, 100 Mass., 212.) Where 'the negligence of defendant is proximate and that of plaintiff remote, the action can be sustained, although the plaintiff is not entirely without fault. (*Trow v. Vt. R. Co.*, 24 Vt., 494.) Contributory negligence is matter of defense and need not be affirmatively disproved to entitle the plaintiff to recover. (*Robinson v. N. Y. C. R. Co.*, 65 Barb., 146.) When the accident results in the death of the injured party, and there is no direct evidence as to whether he did or did not exercise all necessary care, the presumption is that he did. (*Johnson v. H. R. R. Co.*, 20 N. Y., 69; *Hackford v. N. Y. C. R. Co.*, 63 How., 246.) The question of negligence or no negligence, even upon undisputed facts, is for the jury. ( *Webb v. P. & K. R. Co.*, 57 Me., 131.) Where a railroad runs along the highway, any person has a right to travel upon the track, using due care and prudence to avoid injuries, but he is not required to abandon the track to avoid possible injuries which may result from the negligence of the company. (*Shea v. P. & B. V. R. Co.*, 44 Cal., 428.)

SEEVERS, CH. J.—It is stated in the petition that "the defendant in running its cars on its track in Webster county, Iowa, so carelessly, unskillfully and negligently conducted, run and managed the same, that the said William Lang was run over and killed thereby, while rightfully passing along and across the track of said defendant." And it is shown by the testimony that the deceased was a coal miner in the employ of defendant, who was engaged in the business of mining and shipping coal. The railroad track ran along side of the traveled highway for some distance and finally crossed it. The day of the accident was very cold, and the wind was blowing hard from the north. The deceased, having been at work at the mines and being unwell, quit work and started home about

four o'clock, P. M., in company with his daughter, Martha Lang, and Cora Jones. The miners in the employ of defendant frequently, if not usually, walked along the track when going to and from their work, and usually passed over the track early in the morning, and again about five or six o'clock in the evening, this custom being known by the defendant and its employes engaged in managing the trains. Such trains were not run by any time card, but passed over the road six or eight times a day at irregular intervals, and this fact was known by the miners in the employ of the defendant.

On the evening in question the deceased, his daughter and Cora Jones, got on the track some distance from where it crossed the highway, and passed along it going north and facing the wind. The train at the time was coming from the south and also going north. The testimony was conflicting whether the whistle was sounded or the bell rung. The testimony of the deceased's daughter Martha is as follows: "I am fourteen years of age. I was living with father at the time of his death. On that day I was at school. I was a few steps in front of my father at the time he was killed. He was on the crossing at the time the cars struck him, I believe. He could not have been very far, for we were both walking about the same. He was going home from work at the bank. Cora Jones was with us and we were all walking together. We got in advance of father because we were running, and were a few steps in advance of him when we started to run. I do not know whether it was after I stepped off the track or not when I first saw the cars. I looked around and did not see father. It had not struck him. I and Cora went on after we had got off the road. I did not see the cars strike father. I was on the west and father on the east side of the road, and I saw him under the cars just a few steps north of the crossing. I mean by the crossing the place where the wagons cross on the highway which was one length of plank over the track. He was ten or twelve feet north of the plank under the cars when I first saw him. They did not ring the bell or sound the whistle and were running a great deal faster than usual, I should think. They did slacken their speed after the accident. The

train passed along without stopping. The day was very cold and the wind I should judge about from the north. I first met father at the store; he, Cora and I walked up to the railroad and then stepped on the track. The road is on the east side of the track, and runs parallel with it to the crossing. I talked with father after we got on the track about several things, but mostly about my school lessons. When we first got on the track Cora was crying about her hands being cold. Father said we would have to hurry on account of her hands being frozen. Cora and I stepped in front of him, and did not quite run but walked very fast. I saw him after he was struck. He was at the north end of the second car, and was caught by the break, I think. I found a great deal of difficulty in facing the wind that day, and could not see any distance ahead at the time. Father had a scarf around his head; it was put over his ears, crossed in front and tied behind. I recollect that it was half way between the crossing and the old road that my father said we would have to hurry home because Cora's hands were freezing. I looked back once, after Cora and father, when I first got on the track. I don't know whether it was before or after I got off the track. I did not look back to see the cars but I saw them, and think they were just leaving the lower crossing, and did not see them at any other time until I saw father under them. Do not think I saw him when I first looked back, nor did I notice him after Cora and I went ahead. The scarf father had on was made of red flannel, and was about a foot wide and over a yard long; it crossed in front and was tied behind and was over his ears. There are trees along the track below the lower crossing. Cannot remember where I was when I first looked back, when I first saw the cars and did not see father; at the time I looked across the curve." Cora Jones was introduced as a witness by the defendant, but did not testify to anything material. There was no evidence tending to show that the persons on the train, and engaged in managing of it, saw the deceased until after his death. There was considerable other evidence, but none whatever bearing on the question of contributory negligence on the part of the deceased.

This full statement of all the evidence bearing even remotely on the question of contributory negligence, is made for the purpose of showing that under the decisions of this court in *O'Keefe v. C., R. I. & P. R. Co.*, 32 Iowa, 467; *Carlin v. C., R. I. & P. R. Co.*, 37 Iowa, 316, and *Benton v. C. R. of Iowa, infra*, the judgment of the District Court must be reversed, for the reason that the verdict is against the evidence. Even if the court, as at present constituted, were of the opinion that a different rule should prevail, we would feel bound by these decisions. There is no difference between this and the Carlin case in the essential facts, unless it be that the contributory negligence of the deceased is the more clearly shown in this case. The able argument of counsel for the plaintiff is mainly directed against the rule adopted in the foregoing, and numerous other cases in this court, and if we did not feel bound by these decisions, it would necessarily devolve on us to either assent or dissent from the conclusions advanced by counsel, and give the best reason we could for whatever position we might take. But under the circumstances we do not feel called on to give any reason other than the views advanced in the foregoing cases.

REVERSED.