[No. 470.   August 21, 1891.]

GERONIMO CANDELARIA, PLAINTIFF IN ERROR,
v. ATCHISON, TOPEKA & SANTA FE RAIL-
ROAD COMPANY, DEFENDANT IN ERROR.

DAMAGES—NEGLIGENCE—TRESPASS.—In a suit for damages against a railroad company for injuries received, by the plaintiff being struck and thrown from the track by its engine and train of cars, through the alleged negligence of its servants, where the evidence was that, at the time of the accident, the plaintiff was walking upon and along the track of the defendant company; that there was an open public road east of the track, and open spaces between the tracks, upon which the plaintiff might have walked with safety; that the train, at the time, was not moving at a greater speed than was allowed by law; and there was evidence, though conflicting, that the engineer and fireman, when they discovered the plaintiff upon the track, rang the bell, blew the whistle, and put the air brakes on, but not in time to stop the train and prevent the accident—Held: The plaintiff had no legal right to use, and there was no necessity for his walking along, the track of the defendant; and, in doing so, he assumed the risk of his conduct, and became a trespasser in law, for which action on his part he can not recover; and that, though the defendant, through its servants, may have been guilty of some degree of negligence on its part.

ID.—PUBLIC HIGHWAY—RAILROAD CROSSING, LIABILITY FOR FAILURE TO CONSTRUCT—EVIDENCE.—In such case, where the evidence was that plaintiff was walking along, not across, the track of the defendant, the fact offered to be proved by plaintiff, that the track crossed an

old public highway near where plaintiff was injured, at which point defendant failed to provide a crossing, could avail plaintiff nothing; and the court did not err in excluding evidence of such fact.

ID.—VERDICT, THE COURT MAY DIRECT, WHEN.—Where the trial court is satisfied from the facts established that there is no right of recovery in the plaintiff, to the extent that the court would be compelled to set aside the verdict, it may, without error, instruct the jury to find for the defendant.

ERROR, from a judgment in favor of defendant, to the Second Judicial District Court, Bernalillo County. Judgment affirmed.

The facts are stated in the opinion of the court.

B. S. RODEY for plaintiff in error.

H. L. WALDO for defendant in error.

McFIE, J.—In this action plaintiff seeks to recover damages for personal injuries done him by his being thrown from the railroad track of the defendant company by an engine and train of cars thereon, which he charges to have resulted from the negligent conduct of the servants of the defendant, and without any fault of his own. The declaration consists of three counts. The first count charges that the plaintiff in error was injured at a public crossing of the highway over the track of the defendant in error, while the plaintiff was crossing upon said highway, by the carelessness and negligence of the defendant's employees in the management of its locomotive and train. The second proceeds upon the ground that there was a public road formerly existing, from time immemorial, which the railroad company, in the construction of its road, had not restored, and that the plaintiff was unavoidably upon the track of the defendant, for the reason that defendant had failed to restore said road, and that while crossing the track he was injured by the carelessness and negligence of its servants. The third count

charges that, while the plaintiff was crossing defendant's railroad track with all due care and diligence, the defendant drove its train up to and across said highway, and in so doing no bell was rung nor whistle blown, as required by an ordinance of the town of Albuquerque, and the plaintiff was injured by the negligence of defendant's servants, etc. A trial was had in the court below at the May term, 1891, and resulted in a verdict in favor of the defendant, under instructions of the court. To reverse that judgment the plaintiff brings the cause to this court by writ of error.

The testimony in the court below in substance showed that the Atchison, Topeka & Santa Fe Railroad company run its line of railroad through the eastern portion of the city of Albuquerque, and that its main line and a number of side tracks and yards are within the limits of the town of Albuquerque; that upon the west side of the tracks of the Atchison, Topeka & Santa Fe railroad are a number of tracks of the Atlantic & Pacific Railroad Company; that the depot of the defendant company is toward the northern and business portion of the town, and that its yards and side tracks extend for a long distance south of the depot; that there is a regular crossing both for vehicles and persons over the tracks upon a street called "Coal avenue," which street has been extended both upon the east and west sides of the tracks of both the Atchison, Topeka & Santa Fe Railroad Company and the Atlantic & Pacific Railroad Company; that the next regular crossing south of Coal avenue is probably a distance of one mile; that the machine shops of the Atlantic & Pacific Railroad Company are upon the west side of the tracks and about one fourth of a mile south of Coal avenue; that upon the east side of the tracks and opposite the machine shops is a piece of ground that was, at the time of the accident, under fence; that a number of the employees of the railroad com-

panies lived upon the east side of the tracks, as did also others who were not employees of the companies; that both the employees and other persons were in the habit of crossing over the tracks of the defendant company wherever they saw fit to do so, without any regard to regular crossings, for quite a distance both above and below, and in front of the machine shops of the Atlantic & Pacific Railroad Company; that there was an ordinance of the town of Albuquerque, in force at the time of the alleged injury, reading as follows: "It shall be unlawful for any engineer or conductor or any other person having charge, either permanently or temporarily, of any railway engine or train of cars, to run any such engine, or permit the same to be run, within the town limits, without ringing the engine bell, or at a greater rate of speed while passing street crossings than six miles per hour, except when running north of Tijeras road and south of Iron avenue; and, both the engineer and conductor of any train shall be liable for the same offense."

The testimony shows further that on the sixteenth day of June, 1888, the plaintiff approached the tracks of the defendant company from the east side, in the neighborhood of the machine shops of the Atlantic & Pacific Railroad Company, went upon the side tracks and the main line of the defendant company for a considerable distance, and while upon the main line walking north, he was struck by an engine and train of twenty-four cars, knocked from the track, and injured. He admits that he was not an employee of the railroad company, and says that he was going across the railroad on business of his own. There is some conflict in the testimony as to whether the bell upon the engine was rung and the whistle blown, or not. Two or three witnesses testify that they did not hear the whistle or the bell, but the engineer and fireman both swear that the whistle was blown and the bell rung, and that the

air brakes were set upon the train as soon as the fire-
man notified the engineer that there was a man on the
track.  The testimony shows that the train was moving
at the rate of about five miles an hour at the time the
accident occurred.  It is also shown that upon the east
side of the tracks there is a road, extending from Coal
avenue down to the crossing below the machine shops,
the exact distance not being shown.  It is also shown
that between the main line and the side tracks of the
defendant company there are spaces sufficiently wide
for persons to occupy them uninjured while trains are
passing.

What is claimed to constitute the negligence of the
defendant company in this case is the alleged omission
of its servants to have the whistle blown and the bell
rung, and use proper diligence to stop the train.
The defense is that the plaintiff had no legal right nor
license to be upon these tracks, and that, therefore, he
was a trespasser upon the defendant's tracks at the
time the accident occurred.  The plaintiff
admits that he was going across the tracks
of the defendant upon his own business; and, there-
fore, he had not the license that an employee might
have under certain circumstances, in being upon the
tracks of the company.  It is clear that there was no
regular crossing over the tracks of the defendant at the
place where this accident occurred; that persons
approaching the tracks there were in the habit of
crossing the tracks wherever they pleased, without any
regard to any crossing; and it is not pretended that
the company had any regular crossing there which
invited or licensed persons to cross on their tracks.
The testimony of some of the witnesses is that there
were cars frequently standing upon the tracks there,
and that foot passengers crossed wherever they could
get through between the cars.  Can it be contended
that because persons were in the habit of crossing over

DAMAGES: negli-
gence: trespass.

the tracks wherever they pleased, without regard to the regular crossings (and for a long distance up and down the tracks this was done), this fact would constitute a legal right for them to be upon the tracks of the defendant? We think not. But the plaintiff in this case, while he testifies that he was crossing the tracks, shows by his own evidence that he was not crossing the track, but was walking upon the track of the defendant. Every witness that testifies as to the accident states that at the time it occurred the plaintiff was walking upon the track from south to north. The plaintiff himself, when asked if he was not walking straight up the track, admits that he was. It is also shown by the witness Baca that the plaintiff crossed from a switch to the main track, and had proceeded upon the main track but a few steps when he was struck by the train. The witness Sedillo says that he crossed the track to the west side; sometimes he walked on the track, and sometimes at the side of it; then, at one time, he crossed back. The plaintiff himself admits crossing the track, and walking upon and along the same. There is no contradiction of the evidence upon this point that the plaintiff, at the time he was struck by the train, was walking upon the track of the defendant, and using it for a public highway, and without any legal right or necessity for so doing. There was a public road—an open road—to the east of the side track, and there were open spaces between the tracks which could have been used by the plaintiff, and by using them no injury would have been done him; but he chose to go upon the tracks of the defendant for his own convenience, and in so doing he assumed the risk of his own conduct, and became a trespasser, in contemplation of law. In the case of Toomey v. Southern Pacific Railroad Co., 24 Pac. Rep. 1074, which was a case somewhat similar to the one at bar, the supreme court of California, in a well considered opinion, says:

"The track was not a highway for pedestrians. The law holds a railroad company to a very high degree of responsibility for the safety of its passengers, and public convenience requires rapid transit.  Such being the case, regard for the safety of the passengers, and common justice to the company, require that, except at crossings and similar places, the track should be kept clear.  In some countries this is regarded as of such importance that it is made a penal offense to trespass upon a railroad track; and even at crossings there are gates and gate keepers to prevent people from crossing when trains are approaching.  In this country there are no such regulations.  The matter is left to individual good sense and responsibility; but it is none the less of grave importance that the track should be kept clear.  The law does not sanction its use as a path or sidewalk; and, if people persist in using it as such, they must be held to be doing an act which is not lawful.  This, which seems clear enough on principle, is fully sustained by authority."  In Railroad Co. v. Hummell, 44 Pa. St. 378, the court, per STRONG, J., said: "It is time that it should be understood in this state that the use of a railroad track, cutting, or embankment is exclusive of the public everywhere, except where a way crosses it.  This has more than once been said, and it must be so held, not only for the protection of property, but, what is far more important, for the preservation of personal security, and even of life.  In some other countries it is a penal offense to go upon a railroad.  With us, if it is not that, it is a civil wrong of an aggravated nature, for it endangers not only the trespasser, but all who are passing or transporting along the line.  As long ago as 1852, it was said by Judge GIBSON, with the concurrence of all the court, that a railway corporation is a purchaser in consideration of public accommodation and convenience, of the exclusive possession of the ground paid for to the pro-

prietors of it, and of a license to use the highest attainable rate of speed, with which neither the person nor property of another may interfere." Similar language was used in Mulherrin v. Railroad Co., 81 Pa. St. 375. In Railroad Co. v. State, 62 Md. 487, the court, per IRVING, J., said: "A right of way of a railroad company is the exclusive property of such company, upon which no unauthorized person has the right to be; and anyone who travels upon such right of way as a footway, and not for any business with the railroad, is a wrongdoer and a trespasser." The plaintiff in this case being upon the track, using it for his own purposes as a public highway, the defendant did not owe him the duty of doing acts to facilitate his trespass or to render it safe. In the case of Toomey v. Railroad Co., supra, it is further said: "It is to be observed here that we are not saying that the fact that he was a trespasser would justify the infliction of a willful or wanton injury upon him. It is well settled that the commission of a trespass does not justify the infliction of an injury by way of punishment or revenge, or out of mere recklessness. Nor are we saying that the railroad company is not bound to use ordinary care after seeing the dangerous position of a trespasser. What we say is that the company does not owe to a mere trespasser upon its track the duty of doing acts to facilitate his trespass or render it safe. In other words, it is not bound to provide any particular kinds of machinery or appliances for his benefit, or, when not aware of his presence, to give cautionary signals to notify him of the approach of its train."

We think that the law is well settled that a railroad company is only liable, in the case of the trespasser who has been killed or injured by its trains, for the negligence of the defendant's servants after the trespasser's presence upon the track has been discovered. The facts in this case present no such conduct as would

constitute negligence on the part of the defendant after plaintiff's presence was discovered. But suppose the defendant's servants to have been guilty of some degree of negligence, still the plaintiff is not entitled to recover, if he was guilty of contributory negligence. What is contributory negligence? "The more approved statement of the doctrine of contributory negligence is that the person can not recover for an injury to which he contributed by his own want of ordinary care." Pierce, R. R. 323, note 4; Murphy v. Deane, 101 Mass. 455; Baltimore & Pa. Railroad Co. v. Jones, 95 U. S. 439; Beers v. Railroad Co., 19 Conn. 566; Neal v. Gillett, 23 Conn. 437; Johnson v. Railroad Co., 20 N. Y. 65, 73, 6 Duer, 633; Wilds v. Railroad Co., 24 N. Y. 430, 29 N. Y. 315; Grippen v. Railroad Co., 40 N. Y. 34; Carroll v. Railroad Co., 1 Duer, 571; Moore v. Railroad Co., 24 N. J. Law, 268–284; Runyon v. Railroad Co., 25 N. J. Law, 556; Railroad Co. v. Terry, 8 Ohio St. 570; Railroad Co. v. Stallmann, 22 Ohio St. 1; Railroad Co. v. Elliott, 28 Ohio St. 340, 353, 357; Railroad Co. v. Whittaker, 24 Ohio St. 642, 35 Ohio St. 627; State v. Railroad Co., 24 Md. 84–104; French v. Railroad Co., 39 Md. 574; Railroad Co. v. Whittington, 30 Grat. 805, 815; Railroad Co. v. Anderson, 31 Grat. 812; Reeves v. Railroad Co., 30 Pa. St. 454, 464; Harlan v. Railroad Co., 64 Mo. 480, 65 Mo. 22; Railroad Co. v. Miller, 25 Mich. 274; Le Baron v. Joslin, 41 Mich. 313; Wright v. Telegraph Co., 20 Iowa, 195; Sherman v. Stage Co., 24 Iowa, 515; O'Keefe v. Railroad Co., 32 Iowa, 467; Carlin v. Railroad Co., 37 Iowa, 316; Murphy v. Railroad Co., 38 Iowa, 539; Lang v. Railroad Co., 42 Iowa, 677; Railroad Co. v. Hanlon, 53 Ala. 70; Railroad Co. v. Copeland, 61 Ala. 376; Railroad Co. v. Whitfield, 44 Miss. 466–485; Railroad Co. v. Johnson, 38 Ga. 409–431; Railroad Co. v. Carroll, 6 Heisk. 347; Railroad Co. v. Goddard, 25 Ind. 185; Railroad Co. v. Hunter, 33

Ind. 335–356; Needham v. ·Railroad Co., 37 Cal. 409, 419; Robinson v. Railroad Co., 48 Cal. 409; Flemming v. Railroad Co., 49 Cal. 253; Deville v. Railroad Co., 50 Cal. 383; Hearne v. Railroad Co., Id. 482; Railroad Co. v. Grimes, 13 Ill. 585; Knight v. Railroad Co., 23 La. Ann. 462; Davies v. Mann, 10 Mees. & W. 546; Bridge v. Railroad Co., 3 Mees. & W. 244; Tuff v. Warman, 5 C. B. (N. S.) 740; Radley v. Railroad Co., L. R. 1 App. Cas. 754.

It has been repeatedly held on the highest authority that a person crossing a railroad track at the regular, recognized crossing is compelled to use his senses both of sight and hearing for his own protection; and if he fails to do so, and is injured, he is guilty of negligence that will defeat a recovery by him. A person crossing a railroad track at a regular crossing established by the railroad company is said to have a right or license to do so; but a person walking upon the track of the railroad company without authority, and using it for a public highway, is held to a much higher degree of diligence, and takes a greater risk than he who crosses the track at a regular crossing. In the case of Railroad Co. v. Houston, 95 U. S. 697, the court said: "If, then, the positions most advantageous for the plaintiff be assumed as correct, that the train was moving at an unusual rate of speed, its bell not rung, and its whistle not sounded, it is still difficult to see on what ground the accident can be attributed solely to the 'negligence, unskillfulness, or criminal intent' of the defendant's engineer. Had the train been moving at an ordinary rate of speed, it would have been impossible for him to stop the engine when within four feet of the deceased. And she was at the time on the private right of way of the company, where she had no right to be. But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased

from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed to hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity can not be cast upon the defendant. No railroad company can be held for a failure of experiments of this kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure." In the case of Railroad Co. v. Jones, 95 U. S. 439, the court says: "He was not an infant nor non compos. The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter, the former could not arise. He and another who rode beside him were the only persons hurt upon the train. All those in the box car, where he should have been, were uninjured. He would have escaped also had he been there. His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit. The case is thus clearly brought within the second of the predicates of mutual negligence we have laid down."

In the case of Michigan C. Railroad Co. v. Campau, 35 Mich. 468, Chief Justice COOLEY, in ren-

dering the opinion, says: "The intestate does not appear to have looked behind him at all. Had he done so, he would have seen an engine approaching upon him upon the track he had now stepped upon, and with such close proximity that, according to the testimony of the principal witness for the plaintiff, it struck him before he had taken more than five or six steps on the track. The plaintiff claimed that the engine was going at the time at a speed forbidden by law to be run at that point, and his witnesses estimated the speed at from twenty-five to thirty-five miles an hour. He also claimed that the persons in charge of the engine were acting recklessly, and were ringing no bell and giving no signals. Upon this part of the case it must, from the verdict, be assumed that the facts were as the plaintiff alleged. But, admitting this to be the case, the utter want of any foundation for a cause of action on the facts stated is too plain to render extended remarks necessary or profitable. The decedent had voluntarily placed himself in a position of great danger. He was making a highway of a railway track, where he had no lawful right to be, and upon which dangerous vehicles were constantly liable to pass. Under such circumstances he was called upon to exercise more than ordinary care and caution to protect himself against danger which was constantly imminent. Instead of this, he seems not to have availed himself of any precaution whatever. A passing train, which would have been likely to prevent the rumbling or the bell of another being heard, rendered the sense of hearing insufficient for his protection, and added to the necessity of looking about him with vigilance. When, under such circumstances, a person places himself upon a railroad track, with an approaching engine in plain sight, and without even taking the precaution of looking behind him, it is impossible, in speaking of his conduct, to characterize it by anything short of recklessness. If

the plaintiff can recover in a case like this, it is plain that the negligence of the injured party must be held immaterial in any conceivable case."

The law as stated in the above decisions is the well settled law of this country, as declared by the courts of the United States, as well as by the weight of a long line of decisions in the courts of the different states. It is useless to continue the citation of cases wherein it is held that a person crossing a track of a railroad company must use his senses, both of sight and hearing, and any other reasonable care for his own protection, and if he does not do so he is guilty of contributory negligence, and can not recover, although there may have been negligence in some degree on the part of the defendant; and also that, in the case of the trespasser upon the track, a much higher degree of care must be used.

Now, what are the facts in this case upon this point? The only evidence that the plaintiff looked either up or down the track to ascertain whether a train was approaching or not is found in answer to a single question by his counsel. The plaintiff was asked: "Did you look up and down the track when you were about to go on it?" The answer was: "Yes, sir." Then the question was asked plaintiff: "And why could you not see a train coming?" Answer: "Because there were cars on both sides, and the whistle did not blow." The plaintiff did not swear that he looked up and down the track after he got upon the track, but it must be drawn from his answer that he looked before he got upon the track, and he could not see the train approaching, because there were cars on both sides of him. Three witnesses, Bowman, Baca, and Sedillo, testified that they did not see any cars standing on the tracks. But, if there were cars standing at each side of him, so that he could not see a train coming, he should have looked and listened after going

upon the track and walking up the track, where his view would not have been obstructed by the cars. The plaintiff did not testify that he looked back after getting upon the track to see whether the train was coming or not, and the testimony certainly shows that he neither looked nor listened for the train after getting upon the track. The witnesses Bowman and Hatch testify that they came upon the track about seventy-five yards north of him, that he was coming toward them, and they saw the train behind him. Bowman motioned with his arms to attract his attention, but he seems to have been paying no attention whatever to their efforts to warn him until the train was almost upon him. The plaintiff's counsel insists strenuously that the whistle on the machine shops was blowing at the time the plaintiff was walking upon the track, and consequently he could not hear the rumbling of the train approaching him. If true, it would not relieve the plaintiff from the obligation to look and see whether the train was approaching or not. Had he looked, he certainly would have discovered a train approaching him, and thereby no injury would have been done; but he seems to have been guilty of gross neglect, in that he walked for a considerable distance without looking behind him at all. Some witnesses for plaintiff say that he was upon the track when they came upon it, and the train was two hundred yards behind him. Therefore, some time elapsed before the train was upon him. Some of the witnesses testify, also, that the whistle upon the machine shops was not blowing when they first saw the plaintiff walking upon the track. The witness Hatch says that when he and the witness Bowman came upon the track they heard the rumbling of the train, and yet they were seventy-five yards further from the train than was the plaintiff at the time. This clearly shows the testimony of Bowman to be the fact, when he says that the whistle upon

the machine shop was not blowing when he came upon the track, and the plaintiff was upon the track before he came upon it. The witness Baca also says the whistle on the machine shop did not begin to blow until the train was from fifteen to twenty yards from the plaintiff. The testimony shows that the plaintiff, had he been using his sense of hearing, could have heard the train approaching from behind. That he could have seen the train approaching him is undoubted; and the only conclusion to be drawn from such testimony is that he did not either look or listen, or that he recklessly remained on the track after knowing his danger. Either state of facts would prevent a recovery by the plaintiff in this case. The fact that the plaintiff was upon a railroad track at all was a notification of danger. A railroad track is always a dangerous place for a person to be, and they are presumed to know that it is so. Plaintiff was shown to have lived in the neighborhood of the place where the injury occurred for a number of years, and was thoroughly familiar with the situation; and the fact that trains and switch engines passed back and forth over these tracks at all hours of the day—which the testimony clearly shows; and the fact that the blowing of the whistle upon the machine shops was calculated to drown the noise of the whistle of the train or the ringing of the bell would not in any manner relieve the plaintiff from the necessity of the use of ordinary care at the time he was upon the track. He admits that it was so loud that it would drown the whistle or the ringing of the bell, and, therefore, he was chargeable with greater care and diligence to look for the approaching train, both behind and in front of him, and it was negligence on his part not to do so. The testimony also shows that the train was running at a very low rate of speed, and, therefore, there could be no negligence charged on that account; but it is insisted that the

whistle was not blown nor the bell rung, as required
by the ordinance of the town of Albuquerque, which
was admitted to have been in force at the time of the
accident. The fact that the bell was not rung nor the
whistle blown, however, even if true, would not war-
rant a recovery by the plaintiff in this case, as shown
by the evidence and authorities above cited; and many
other authorities may be cited in support of the same
position. It is incumbent upon the plaintiff to prove
his allegations, and to establish the negligence of the
defendant, before he can recover under any circum-
stances; and the negligence complained of is the failure
to ring the bell, and blow the whistle, and take the
necessary steps to stop the train. Plaintiff himself tes-
tifies that the whistle was not blown, but he is not
supported by any other witness in the case. The wit-
ness Bowman says he did not hear the whistle blown
or the bell rung; the witness Hatch testified that he
did not know whether the whistle was blown and the
bell rung or not; the witness Baca testified to the same
effect; and the witness Sedillo testified that he did not
hear the alarms given, but later in his testimony admits
that he had stated previously that he did hear the
whistle blown and the bell rung. Therefore, the testi-
mony for the plaintiff as to the failure to blow the
whistle and ring the bell is very slight indeed. But on
behalf of the defendant, the engineer testifies that the
whistle was blown, and also that the bell was ringing
for a long distance before the plaintiff was struck by
the engine. The fireman testifies to the same effect,
and that he himself rang the bell until the plaintiff was
knocked from the track.

Now, what efforts were made to stop the train?
The engineer testifies that he did not see the plaintiff
upon the track at all; that a very short time before the
train struck plaintiff the fireman called to him that
there was a man on the track; and the engineer testi-

fies that "the first thing I did was to blow the whistle with my left hand, and grab the throttlevalve with the other, and apply the air. Question. What do you mean by applying the air? Answer. Setting the brakes and stopping the train." Consequently, the witnesses for the defense, being the only witnesses who were in a situation to testify as to what was done to stop the train, show by their testimony that the air brakes were applied immediately, and that it was impossible, as the engineer further testifies, to blow the whistle and apply the air brakes and reverse the engine at the same time, but that he did all that he could to stop the train before it reached the plaintiff after his presence was discovered. The engineer further says that the reason he could not see the plaintiff was that he was upon the opposite side of the engine, and that he did not see him at all until he was falling from the front of the engine. The engineer also testifies that he was looking out for a train coming from the other direction, which was due about that time. There is no proof that the engineer did see the plaintiff; and, if it is insisted by the plaintiff that the negligence of the defendant consisted in failing to see him in time to stop the train, it may be replied that the testimony shows that the plaintiff, in walking up the track, was sometimes along the side of the track, sometimes upon a switch near by, and sometimes walking on the main track. The witness Baca, who was a witness for the plaintiff, testified that "the old man crossed from the switch to the main track," upon which the train was coming, and had only proceeded a few steps upon the main track when he was struck by the engine. The witness Sedillo testified that he saw the old man cross the track to the west side, walk up along the side of the track some distance, and then go upon the middle of the track, where he was when he was struck. The law is well settled that the engineer, in case he discovered

the plaintiff upon the track, had a right to presume that the plaintiff, who was an adult, would use ordinary care, and thereby leave the track in time to prevent an injury; and especially is that true under the testimony in this case, when it was shown that the plaintiff was on and off the track at different times; and if the testimony of the witness Baca is true, and he is a witness for plaintiff, the plaintiff had been, as the engine approached near to him, walking upon a switch, and crossed over to the main track just before the train, so as to get but a few steps before the train struck him. If he was seen upon the switch, there was no danger of injury, and the engineer had no reason to believe that he would step to the main track just in front of the train, which he certainly did, without looking whether a train was approaching or not. Therefore, we see no room for the contention, under the evidence, that there was negligence on the part of the defendant's servants in that they failed to stop the train. The evidence certainly shows that ordinary diligence was used by them.

We have endeavored to present fully the testimony in this case, and apply the law applicable to it, that the assignments of error may be the more clearly understood. In the court below, after the evidence was all in, a motion was made on behalf of the defense that the court instruct the jury to find for the defendant, which instruction was given. This is one of the errors upon which the plaintiff relies for the reversal of this case, and states in argument, that the question before the court now is not that the plaintiff was entitled to recover even if the case had gone to the jury, but whether or not the court erred in instructing the jury to find for the defendant. Juries in this territory are the judges of the facts, and in all cases where there is a real conflict of evidence upon material issues in the case, where the material issues are disputed, and

VERDICT, when court may direct.

the testimony of witnesses must be weighed and their credibility determined, the court certainly would not be authorized to withhold from the jury the determination of the facts in such cases; but where the facts as to material issues are practically undisputed, and are therefore established, the law is that in case the court is satisfied from the facts established that there is no right of recovery in the plaintiff, to the extent that the court would be compelled to set aside the verdict, the court may, without error, instruct the jury to find for the defendant.   The former rule that all questions of fact must be submitted to the jury, if there is a "scintilla" of evidence, has been materially relaxed, and from the more recent cases a more liberal interpretation of the rule has obtained.   In the case of Railroad Co. v. Houston, 95 U. S. 697, from which we have already above quoted, the court, upon the state of facts there presented, said: "Upon the facts disclosed by the undisputed evidence in the case, we can see no ground for a recovery by the plaintiff.   Not even a plausible pretext for a verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation.   Under these circumstances the court would not have erred had it instructed the jury, as requested, to render a verdict for the defendant."   In the case of Schofield v. C. & S. P. Railroad Co., 114 U. S. 619, the court said: "It is the settled law of this court that when the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."   Improvement Co. v. Munson, 14 Wall. 442; Pleasants v. Fant, 22 Wall. 116; Herbert v. Butler, 97 U. S. 319; Bowditch v. Boston, 110 U. S. 16; Griggs v. Houston, 104 U. S. 553; Randall v. Railroad Co., 109 U. S. 478;

Anderson County Commissioners v. Beall, 113 U. S. 227; Baylis v. Insurance Co., Id. 316. In Railroad Co. v. Jones, 95 U. S. 439, it was held that "the plaintiff was not entitled to recover. It follows that the court erred in refusing the instruction asked upon this subject. If the company had prayed the court to instruct the jury to return a verdict for the defendant, it would have been the duty of the court to give such direction, and error to refuse." In the case of D. L. & W. Railroad Co. v. Converse, 139 U. S. 469, which was a case in which it is stated by the court that there was some conflict in the evidence relating to certain matters, but certain facts were clearly established, the court says: "It is contended that the court erred in not submitting to the jury the issue as to the defendant's negligence. Undoubtedly, questions of negligence in actions like the present are ordinarily for the jury, under proper instructions as to the parts of the law by which they should be controlled. But it is well settled that the court may withdraw a case from that body, and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed, and is of such a conclusive character that the court, in the exercise of its judicial discretion, would be compelled to set aside the verdict returned in opposition to it." The judicial records of this country show that, while there have been many meritorious cases upon this subject presented to the courts, there have also been many cases without merit which have consumed the time of the courts and juries unnecessarily. It is obvious that the rule as now laid down is intended to place it within the power of the courts to terminate frivolous litigation whenever, as shown by the evidence, such case may be presented. As was said in the case of North Pennsylvania Railroad Company v. Commercial National Bank, 123 U. S. 727: "It would be an idle proceeding to submit the evidence

to the jury when they could justly find only in one way." The evidence in this case is practically undisputed. It is clearly established that the plaintiff was not crossing the track, but that he was walking along the track, and it is undisputed that the place where the plaintiff was struck by the engine was not at a public crossing where the plaintiff had a legal right to be. The evidence for the plaintiff alone shows that he was using the track for a public highway at a very dangerous place; that he did not exercise ordinary care and diligence, either by looking or listening for the approach of the train; and these facts are sufficient to constitute negligence under the decisions of our courts, such as would defeat a recovery by the plaintiff in this case. The only question upon which there is any conflict of the evidence at all, if there can be said to be any conflict, is upon the question whether the whistle was blown and the bell rung or not; but, admitting that they were not, it would not justify a recovery by the plaintiff. The evidence as to the blowing of the whistle and the ringing of the bell on the part of the plaintiff is of the most doubtful and uncertain character, and the only positive evidence as to whether the whistle was blown and the bell rung is given by the witnesses for the defendant. Therefore, as the evidence stood at the time the court was asked to instruct the jury, there could be no serious contention that a jury would be justifiable in inferring such negligence on the part of the defendant as would render the defendant liable in the case. So that, upon the whole case as shown by the testimony, a case was presented that the court was authorized to instruct the jury to find for the defendant. Such a case was presented that a jury would not have been justified, from any testimony in the case, in inferring negligence that would render the defendant liable. Negligence is a mixed question of law and fact, but in case the material facts are undisputed it may become a

question of law, and in such case the court may properly direct the verdict as the law requires. An examination of the authorities as to what constitutes contributory negligence will show that, where the plaintiff fails to use such ordinary care and diligence as that of looking and listening for the approach of a train, it is held to be negligence in law, and will defeat a recovery. The plaintiff was an old man, but there is nothing to show that either his sight or his hearing was defective. He was thoroughly familiar with the danger incident to his position on the track of the defendant. He was chargeable with knowing that upon this network of tracks in the defendant's yards trains were passing continually back and forth, day and night; and he is not excusable if, by his failure to exercise ordinary care and diligence, he was injured, although the defendant's agents may have also been guilty of some degree of negligence. A railroad company is not required under such circumstances to practically become the insurer of the party injured, but rather he must become his own insurer. Suppose this case had gone to the jury upon the testimony disclosed in this record, and the jury had found for the plaintiff; upon motion to set aside the verdict the court would have been compelled to sustain the motion for want of evidence to support the verdict. That being true, it was not only the prerogative of the court to terminate the litigation at the earliest period after the testimony was all in, but it was the manifest duty of the court to do so. It is better to terminate such a case before verdict than set it aside after verdict, where the court can not permit a verdict to stand. Hence we are of the opinion that the court below did not err in instructing the jury to find for the defendant.

The second asssignment of error is that the court refused to allow the plaintiff to prove that in the year 1880, when the Atchison, Topeka & Santa Fe Railroad

was constructed, the track crossed an old public highway somewhere near the point where the plaintiff was injured, and did not provide a crossing. This can not avail the plaintiff in this case. He was not crossing the track, but was traveling along the track. If the railroad company failed to provide a crossing where the old road was, that would not justify the plaintiff in walking along the railroad track in a different direction. If there was a road there at all in 1880, it crossed the track from east to west, but the plaintiff in this case was traveling along the track from south to north. In any event it could not constitute negligence on the part of the defendant company at this time, eleven years later, that would excuse the plaintiff for negligence on his part. The evidence being immaterial, the court did not err in excluding such evidence. D. L. & W. Railroad Company v. Converse, 139 U. S. 476. Finding no error in the record, the judgment of the court below is affirmed.

<span style="font-variant: small-caps">Public highway: railroad crossing, liability for failure to provide.</span>

O'BRIEN, C. J., and FREEMAN and SEEDS, JJ., concur. LEE, J., did not sit in this case.